# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| JOSEPH LEE COURTNEY,     ) <br>     Plaintiff,     ) <br>     ) <br> v.     ) <br>     ) <br> KILOLO KIJAKAZI, *Acting*     ) <br> *Commissioner of Social Security*,[1]     ) <br>     Defendant.     ) | CIVIL ACTION NO. 2:20-00381-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joseph Lee Courtney brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[2] Upon due consideration of the parties' briefs (Docs. 20, 21, 24) and those portions of the certified transcript of the administrative record (Doc. 17) relevant to the issues raised, the Court finds that

---

[1] As has been called to the Court's attention in other cases, Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. *See* https://www.ssa.gov/org/coss.htm; https://www.reuters.com/world/us/biden-fires-social-security-commissioner-2021-07-09/ (last visited Mar. 30, 2022). Accordingly, Kijakazi is automatically substituted for Andrew Saul as the defendant in this action under Federal Rule of Civil Procedure 25(d), and this action continues unabated. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title and docket of this case accordingly.

[2] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a) (1982 ed., Supp. III)).

the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I.    *Procedural Background*

Courtney protectively filed the subject SSI application with the Social Security Administration ("SSA") on February 1, 2016. After it was initially denied, Courtney requested, and on December 12, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On February 11, 2020, the ALJ issued an unfavorable decision on Courtney's application, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 17, PageID.86-103).

The Commissioner's decision on Courtney's application became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on June 11, 2020. (*Id.*, PageID.56-60).[4] Courtney subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The

---

[3]    With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 27, 28).

With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 26, 29).

[4] After holding an October 5, 2017 hearing, the first ALJ assigned to Courtney's case issued an unfavorable decision on August 13, 2018. (*See* Doc. 17, PageID.178-195). However, on June 18, 2019, the Appeals Council granted Courtney's request for review of that decision, vacated it, and remanded Courtney's case for a new hearing and decision, with instructions. (*Id.*, PageID.196-198). On remand, a different ALJ issued the second unfavorable decision that constitutes the Commissioner's final decision subject to review in this action.

final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402

U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by

the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[5]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct

---

[5] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[6]

---

[6] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court

---

further argument or discussion, constitutes abandonment of that issue').")); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921

(11th Cir. 2019) (per curiam) (unpublished)[7] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for SSI requires a showing that the claimant is disabled, 42 U.S.C. § 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[8]

---

[7] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[8] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full

and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new

evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Courtney had not engaged in substantial gainful activity since the application date of February 1, 2016.[9] (Doc. 17, PageID.91). At Step Two,[10] the ALJ determined that Courtney had the following severe impairments: status post open reduction internal fixation left tibia and fibula fixation; status post repair of hernia with recurrence; status post repair bladder rupture; degenerative disc disease; osteoarthritis of the left ankle; and obesity. (Doc.

---

[9] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore*, 405 F.3d at 1211 (citation omitted).

[10] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.'" *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

17, PageID.91-92). At Step Three,[11] the ALJ found that Courtney did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 17, PageID.93).

At Step Four,[12] the ALJ determined that Courtney had the residual functional

---

[11] Conversely to Step Two, Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

[12] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and

capacity (RFC) "to perform sedentary work as defined in 20 CFR 416.967(a)[13] except he can occasionally climb ramps and stairs, stoop, kneel and crouch[;] should never climb ladders, ropes or scaffolds nor should he crawl[;] can have only occasional exposure to extremes of cold as well as vibration[;] should have no exposure to hazards such as unprotected heights and dangerous machinery[;] could occasionally operate foot controls with his left lower extremity[; and] could only occasionally reach overhead with the left upper extremity." (Doc. 17, PageID.93-97).

Based on the RFC and the testimony of a vocational expert,[14] the ALJ found that Courtney was incapable of performing any past relevant work. (Doc. 17,

---

nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021).

[13] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "sedentary" work are as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

[14] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

PageID.97). However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there exist a significant number of jobs in the national economy as an interviewer, assembler and packager, and order clerk/other type of clerk, that Courtney could perform given his RFC, age, education, and work experience. (*Id.*, PageID.97-98). Thus, the ALJ found that Courtney was not under a disability as defined by the Social Security Act from the disability onset date through the date of the ALJ's decision. (*Id.*, PageID.99).

## IV.   *Analysis*

### a.   **Dr. Travis's Medical Opinion**

Courtney first argues that the ALJ erred in rejecting the medical opinion of his treating physician, Judy Travis, M.D. No reversible error has been shown.

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including

(1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179.

The opinions of non-treating physicians "are not entitled to deference..." *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord, e.g.*, *Crawford*, 363 F.3d at 1160 ("The ALJ correctly found that, because Hartig examined Crawford on only one occasion, her opinion was not entitled to great weight."). On the other hand, "[t]he opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.' With good

cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41) (internal citation omitted). *See also, e.g.*, *Bloodsworth*, 703 F.2d at 1240 ("[T]he opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight or where it is unsubstantiated by any clinical or laboratory findings. Further, the [Commissioner] may reject the opinion of any physician when the evidence supports a contrary conclusion." (citation omitted)); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991) ("The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.").

Failure to clearly articulate the reasons for giving less than substantial or considerable weight to the opinion of a treating physician "constitutes reversible error." *Lewis*, 125 F.3d at 1440. Moreover, an ALJ "may not arbitrarily reject uncontroverted medical testimony[,]" *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982), or "substitute[] his judgment of the claimant's condition for that of the medical and vocational experts." *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (per curiam). "But ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled[,]" *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 691 n.1 (11th Cir. 2020) (per curiam) (unpublished), and "if an ALJ articulates specific reasons for declining to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error."

*Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 861 (11th Cir. 2017) (per curiam) (unpublished) (citing *Moore*, 405 F.3d at 1212). *Accord Huigens v. Soc. Sec. Admin., Comm'r*, 718 F. App'x 841, 844 (11th Cir. 2017) (per curiam) (unpublished). A court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015) (citing *Moore*, 405 F.3d at 1212).

On January 18, 2017, the SSA substantially revised the regulations governing what constitutes a medical opinion, and how the Commissioner considers them. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). Among other things, the revised regulations state that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … , including those from [a claimant's] medical sources[,]" and will instead evaluate medical opinions for persuasiveness. *See* 20 C.F.R. § 416.920c(a). However, those revised regulations are only applicable to claims filed on or after March 27, 2017. For those filed before that date, such as Courtney's present application, the rules set out in the preceding paragraphs still apply. *Compare* 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

In spite of this, as Courtney correctly points out, the ALJ prefaced her consideration of the medical opinions in the record by discussing the regulations applicable to claims filed on or after March 27, 2017.[15] Courtney argues this shows

---

[15] (*See* Doc. 17, PageID.95-96 ("As for the medical opinions and prior administrative

"the ALJ's decision is flawed from the outset because she clearly applied the wrong legal standard in evaluating the medical opinion evidence in Mr. Courtney's claim." (Doc. 21, PageID.1204). The undersigned, however, agrees with the Commissioner that the ALJ's erroneous citation to the new regulations is harmless, as the ALJ's decision indicates she substantively applied the old rules by expressly assigning evidentiary "weight" to the medical opinions of record, which would not be allowed under the new regulations. (*See* Doc. 17, PageID.96). The ALJ's inclusion of boilerplate language discussing the new regulations governing medical opinions appears to be a mere scrivener's error.

Dr. Travis provided medical opinions on a form "Medical Source Statement" and a form "Clinical Assessment of Pain," both dated July 7, 2016. (Doc. 17, PageID.492-496 [Administrative Ex. 5F]). The ALJ addressed Dr. Travis's treatment notes and medical opinion as follows:

> The claimant's office treatment notes from Dr. Travis are basically identical at each visit (Exhibit 16F). Although there was a diagnosis of anxiety from Dr. Travis, the treatment notes consistently indicate "++Anxiety" with no discussion or clarification as to how the anxiety is affecting him. The claimant has had a recurrent hernia but he is scheduled to have that repaired. At an emergency department visit

---

medical findings, the regulations provide that we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. I fully considered the medical opinions and prior administrative medical findings in this case. It is important for the reader to understand that a medical opinion is a statement from a medical source about what a claimant can still do despite his impairments and whether he has one or more impairment related limitations or restrictions in abilities to perform certain demands of work (20 CFR 404.1513(a)(2) and 416.913(a)(2)). When evaluating a medical opinion, we consider supportability, consistency, relationship with the claimant, specialization, and other factors pursuant to 20 CFR 404.1520b(c) and 416.920b(c).")).

there was no weakness/ paralysis or grip issues noted (Exhibit 18F, page 14). His range of motion was also noted as motor and sensory grossly normal, with overall relatively normal findings (Exhibit 18F, pages 16, 27-28). In July 2019 at an appointment for his failed hernia mesh procedure, his examination was otherwise normal with the musculoskeletal inspection normal and non-tender to palpation except for some numbness and tingling in his left leg (Exhibit 19F)…

I have found the September 216 [sic] opinion of the treating physician, Dr. Travis, to have little weight (Exhibit 5F). I have assigned little weight to Dr. Travis' opinion as it is not consistent with her own treatment records, which note generally full range of motion of his extremities, good muscle mass, no atrophy and no deficits in the claimant's gait. Notably, Dr. Travis' records consist mostly of medication refills with very little, if any, discussion regarding the necessity for the narcotic medication she was prescribing. It is for these reasons that I assign little weight to this opinion.

(*Id.*, PageID.95-96). By finding that Dr. Travis's medial opinion was inconsistent with her own medical records, the ALJ articulated sufficient "good cause" to reject that opinion. *Winschel*, 631 F.3d at 1179

Courtney argues that "the ALJ fail[ed] to consider … the objective tests and findings in Dr. Travis' records confirming the severity of the trauma Mr. Courtney sustained to his right and left lower extremities." (Doc. 21, PageID.1206-1207). As Courtney points out (*see id.*, PageID.1207-1209), based on her review of x-rays, Dr. Travis diagnosed traumatic arthritis in Courtney's right ankle, and unspecified fracture of the upper end of the right tibia, subsequent encounter for closed fracture with malunion. She also noted a rod, other surgical hardware, and some open fractures in both of Courtney's legs. Dr. Travis also treated Courtney for pain. Courtney further points out that Oluyinka Adediji, M.D., a consultative examining

physician, "noted Mr. Courtney's left knee was mildly swollen, he had crepitus on palpation, he had pain with passive flexion and extension; he had left ankle pain with movement in all axes." (*Id.*, PageID.1209).

However, "the mere existence of these impairments does not reveal the extent to which they limit [Courtney's] ability to work or undermine the ALJ's determination in that regard." *Moore*, 405 F.3d at 1213 n.6. *Accord, e.g.*, *Proenza v. Comm'r of Soc. Sec.*, No. 20-14237, 2021 WL 3073777, at *3 (11th Cir. July 21, 2021) (per curiam) (unpublished) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work. Nor does it undermine the ALJ's determination that she can work." (citing *Moore*, 405 F.3d at 1213 n.6)). Courtney does not seriously contest the ALJ's finding that Dr. Travis's notes documented largely "normal findings" in Courtney such as "general[] full range of motion of his extremities, good muscle mass, no atrophy and no deficits in [his] gait." Thus, even granted the existence of the impairments Courtney highlights, Dr. Travis's own notes indicate they did not limit him to the severe degree her medical opinions asserted.[16] Dr. Adediji's notes also document relatively mild findings in spite of Courtney's impairments,[17] and Dr. Adediji opined that Courtney could perform light work with

---

[16] Courtney notes one instance where Dr. Travis assessed decreased range of motion in the left leg. The mere fact that a claimant can point to some evidence in the record cutting against an ALJ's factual finding is insufficient to show reversible error, as only substantial evidence need support the finding.

[17] (*See* Doc. 17, PageID.95 ("The claimant presented to Oluyinka Adediji, M.D., for a consultative examination in February 2018 (Exhibit 12F). Dr. Adediji noted the claimant stated he was able to perform personal care and meal preparation as well as light domestic chores such as laundry. He stated that he was not able to do heavy

some limitations, an opinion to which the ALJ gave "great weight." (*See* Doc. 17, PageID.96).[18]

Moreover, the mere fact that Courtney was prescribed medication to treat pain does not command a finding of disabling symptoms; indeed, a "medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (quotation omitted). The ALJ stated that the RFC was supported by, *inter alia*, "the conservative degree of treatment the claimant received[ and] the claimant's response to treatment" (Doc. 17, PageID.97), indicating a finding that Courtney's medications were effective in treating his pain.[19] Thus, substantial evidence supports the ALJ's "good cause" to reject Dr. Travis's opinion.

---

lifting or push a lawn mower. He stated he had no difficulty focusing on tasks or performing simple manual operations. Dr. Adediji noted he appeared well developed, well-nourished and in no apparent distress. His posture was erect and there were no issues noted with his musculoskeletal examination. His gait and station was normal. He had no problems getting on or off of the examination table. He was able to squat, walk on heels and toes, and in tandem without difficulty. His Romberg was negative. His cervical and thoracolumbar spine had a normal range of motion. His left knee was mildly swollen without effusion. His left lower extremity had mild tenderness. His sensation was intact to pin prick. His handgrip strength was noted to be normal 5/5 bilaterally. He was assessed with a left knee pain, posttraumatic arthritis, left leg pain due to late effect of fracture, and left ankle pain due to early arthritis.")).

[18] While Courtney's brief notes some impairments and conditions he claims Dr. Adediji did not consider in giving his opinion, he does not assert the ALJ committed reversible error in giving Dr. Adediji's opinion great weight. Regardless, the mild findings in both Dr. Travis and Dr. Adediji's notes provide support for Dr. Adediji's opinion.

[19] Indeed, Dr. Adediji noted that Courtney's medication "has been effective in controlling the pain" with "[n]o medication problems reported." (Doc. 17, PageID.781).

### b.      RFC

Courtney next argues the ALJ reversibly erred by failing to include additional limitations related to his medically determinable impairments in the RFC. No reversible error has been shown.

With regard to this claim of error, Courtney first argues: "Particularly lacking is any limitation regarding Mr. Courtney's ability to maintain concentration, persistence and pace in the RFC. It is clear from the record Mr. Courtney suffers from chronic pain. Even Dr. Adediji opined pain would be a limiting factor for Mr. Courtney." (Doc. 21, PageID.1213 (record citations omitted)). However, Courtney ignores the fact that Dr. Adediji also noted Courtney's admission that he "had no difficulty focusing on tasks[,]" and that his pain has been effectively controlled by medication. (Doc. 17, PageID.95, 781). Thus, substantial evidence supports the ALJ's decision not to include such limitations in the RFC.

Second, Courtney argues that the ALJ failed to explain why the following portions of Dr. Adediji's opinion were not included in the RFC: "occasional pushing and pulling with both the right and left hand; never balance; never climb stair and ramps; never crouch; never be exposed to extreme cold or extreme heat; never be exposed to vibrations." (Doc. 21, PageID.1215). However, this argument fails to acknowledge that the ALJ explained: "While there may be discrepancies between Dr. Adediji's specific opinions and markings and the limitations reflected in the claimant's residual functional capacity, these discrepancies are based on, inter alia, my independent review, my consideration of the claimant's testimony, and all other

evidence in the aggregate, some of which may not have been available to Dr. Adediji at the time of the expressed opinions." (Doc. 17, PageID.96). Moreover, the ALJ only purported to give Dr. Adediji's opinion "great weight" rather than controlling weight. Under the applicable regulations, "controlling weight" can only be given to the opinions of treating sources, *see* 20 C.F.R. § 416.927(c)(2), which Dr. Adediji, a one-time examiner, was not. Accordingly, Courtney has failed to show the ALJ erred in not adopting Dr. Adediji's opinion verbatim.

Finally, Courtney argues that the ALJ failed to include limitations related to his severe impairment of status post repair bladder rupture. As Courtney points out, at the ALJ hearing, in response to questioning by his representative, Courtney testified that, because of his ruptured bladder, he doesn't "urinate as much at one time, so usually once an hour[, and s]ometimes … twice an hour." (Doc. 17, PageID.120-121). Later, Courtney's representative had the following exchange with the vocational expert:

> Q [Courtney's Representative] And assume a hypothetical individual due to injury to bladder, has to use the restroom at least one time an hour, occasionally twice an hour every hour in an eight-hour day, what impact would that have on employability?
>
> A And how long would that take the person to be off task that way?
>
> Q Just say five minutes in an hour every hour, frequently and then occasionally ten minutes.
>
> A That would, that would take them off task too much, too long and that would preclude work.

(*Id.*, PageID.136-137).

It is true that the ALJ does not address the issue of more frequent bathroom

breaks in his decision. However, it should be noted, as an initial matter, that the vocational expert's answer was based on the length of time per hour Courtney would be "off task" while taking bathroom breaks, and not on the mere fact he might have to take more frequent bathroom breaks. Courtney himself did not testify as to how long an average bathroom break took him, and the ALJ was not required to accept the representative's unsubstantiated estimation as to how long those breaks would last. Moreover, as the Commissioner correctly points out, issues with more frequent urination were not documented in Courtney's treatment notes. Rather, Dr. Travis regularly noted that Courtney's "genitourinary" system was "within normal limits," (Doc. 17, PageID.600, 603-604, 608-609, 613, 617, 621, 624-625, 628, 634, 640-641, 647-648, 651-652, 656-657, 965, 973, 979, 984, 989-990, 994-995, 999-1000, 1004-1005, 1009-1010, 1014-1015, 1019-1020, 1023-1024, 1027-1028, 1033-1034), except for one occasion in which only a "testosterone def." was noted. (*Id.*, PageID.631). On multiple occasions, Courtney specifically denied "frequency" in urination. (*Id.*, PageID.972, 978, 983, 989, 994, 999). Thus, substantial evidence supports the ALJ's implicit finding that urinary issues did not impact the RFC.

### c.   Additional Impairments

Finally, Courtney argues that the ALJ reversibly erred by failing to consider his additional impairments of chronic fatigue, diabetes mellitus, and status post gunshot wound to the left thigh and right hand. It is true that an ALJ must consider a claimant's severe and non-severe impairments in combination past Step Two. *See* 20 C.F.R. § 416.923 ("In determining whether your physical or mental impairment or

impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, we will consider the combined impact of the impairments throughout the disability determination process."); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–69 (11th Cir. 2019) (per curiam) ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC. The ALJ must also consider a claimant's medical condition taken as a whole." (citation omitted)); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation."). However, an impairment must first be found "medically determinable" before it is classified as "severe" or "non-severe." *See* 20 C.F.R. § 416.921 ("After [the Commissioner] establish[es] that [the claimant] ha[s] a medically determinable impairment(s), then [the Commissioner] determine[s] whether [the] impairment(s) is severe.").

A "medically determinable" impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques[--i.e.,] by objective medical evidence from an acceptable medical source." 20 C.F.R. § 416.921. A claimant's

"statement of symptoms, a diagnosis, or a medical opinion [cannot] establish the existence of an impairment(s)." *Id.* Here, Courtney fails to offer any substantive argument why the ALJ erred in failing to find any of the foregoing additional impairments "medically determinable," and the portions of the record he cites in support consist only of either diagnoses or Courtney's statements of symptoms, none of which is sufficient to establish a medically determinable impairment. And because the ALJ implicitly found those impairments not medically determinable at Step Two, he was not required to consider them at the later steps.

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Courtney's application for benefits is due to be **AFFIRMED**.

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Courtney's February 1, 2016 SSI application is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 30th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**